UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X   Index No. 20-cv-05676
JEAN KING,

                                                       COMPLAINT

                        Plaintiff,

            - against -                                 PLAINTIFF DEMANDS
                                                       A TRIAL BY JURY
COSTCO WHOLESALE CORPORATION,

                        Defendant.
-----------------------------------------------------------------------X

Plaintiff, JEAN KING, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendant, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action alleging that Defendant has violated the **Family and Medical Leave Act**, 29 U.S.C. § 2601, et seq. ("FMLA"); **Americans with Disabilities Act of 1990**, 42 U.S.C. § 12101, *et seq.* ("ADA"); the **New York State Human Rights Law**, New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the **Suffolk County Human Rights Law**, Laws of Suffolk County, New York, Part II § 528 *et seq.* ("SCHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated and retaliated against on the basis of her disability, and for taking a legally protected leave of absence, ultimately resulting in her termination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 29 U.S.C. § 2601, 42 U.S.C. §12101, et seq., and 28 U.S.C. §§ 1331 and 1343 as it arises under the laws of the United States and is an action to recover damages or to secure equitable or other relief under an Act of Congress providing for the protection of civil rights.

3. The Court has supplemental jurisdiction over the claims of Plaintiff brought under state laws pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5. Plaintiff timely filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC") on July 16, 2019.

6. On March 24, 2020, the EEOC issued a finding in favor of Plaintiff and that there is reasonable cause to believe that Defendant has discriminated against Plaintiff because of her disability by failing to make reasonable accommodations in violation of the ADA.

7. Plaintiff received a Notice of Right to Sue from the EEOC, dated August 24, 2020, concerning the herein charges of discrimination. A copy of the Notice is annexed hereto as exhibit A.

8. This action is being commenced within 90 days of receipt of said Notice of Right to Sue.

## PARTIES

9. At all times relevant, Plaintiff was and is a resident of the State of New York, and Suffolk County.

10. At all times relevant, Plaintiff was a "person" and an "employee" entitled to protection as defined by state and federal laws.

11. At all times relevant, Defendant COSTCO WHOLESALE CORPORATION, ("Defendant") was and is a foreign business corporation incorporated in the State of

Washington and conducts business pursuant to, and by virtue of, the laws of the State of New York.

12. At all times relevant, Defendant was and is an American multinational corporation which operates a chain of membership-only warehouse clubs.

13. At all times relevant, Plaintiff worked at Defendant's warehouses located at 1768 Old Country Road, Riverhead, New York 11901, where the discrimination and retaliation took place.

14. At all relevant times, Defendant was and is an "employer" within the meaning of all relevant statutes.

## MATERIAL FACTS

15. On or about July 23, 1998, Plaintiff began working for Defendant at its Lawrence, New York warehouse in their Member Service department performing security task and duties. She eventually worked her way up to the position of Cashier.

16. In June of 2014, Plaintiff was transferred, upon request, to Defendant's Riverhead warehouse where she continued to work as a Cashier and earned approximately $23.50 per hour.

17. The Cashier position involves continuous standing and moving items from the members' carts to the conveyor belt and scanning them.

18. Throughout her employment until Plaintiff was injured on the job in December 2015, Plaintiff consistently received positive performance reviews and has been an above-satisfactory employee who performed her duties without any performance issues.

19. On December 1, 2015, Plaintiff was injured on the job when a colleague accidently slammed a shopping cart into Plaintiff's leg (the "Injury"). The Injury caused Plaintiff to limp in pain and suffer a great amount of anguish.

20. Defendant's management filled out an Incident Report, took photos of Plaintiff's swollen knee, and had Plaintiff speak with a nurse via telephone. The nurse suggested that Plaintiff ice the swollen knee and take the rest of the day off.

21. Plaintiff took the next several days off from work and attended a scheduled medical appointment to see Defendant's doctor. Plaintiff was given Motrin, cortisone injections, and an ace bandage for her knee.

22. On or about December 8, 2015, Plaintiff returned to her position as Cashier on full duty.

23. However, the pain in Plaintiff's knee was persistent and excruciating.

24. In or about March 2016, due to the severity of the pain in her knee, Plaintiff saw her own orthopedic doctors, Dr. Richard A. Ritter and Dr. Barry C. Kleeman. Dr. Kleemen took X-rays of Plaintiff's knee, which showed she had a chipped bone on her kneecap. She was given a knee brace and a doctor's note with medical restrictions.

25. Plaintiff immediately provided Defendant's management and Human Resources ("HR") department the doctor's note, which prohibited heavy lifting.

26. Plaintiff requested to go on intermittent FMLA leave to facilitate her recovery. Defendant denied Plaintiff's FMLA application. Its stated reason for the denial was the Plaintiff was already on intermittent FMLA leave in connection with caring for her twin children who have serious health conditions.

27. As an accommodation of Plaintiff's medical restrictions, Defendant assigned Plaintiff to be a front entrance worker, which was a more sedentary position, while maintaining the job title of Cashier.

28. Thereafter, Defendant's General Manager, Jon Jovel, ("Jovel") regularly targeted and singled out Plaintiff with negative treatment because of her disability and retaliated against Plaintiff for requesting an accommodation of her disability.

29. For example, upon information and belief, Jovel directed supervisors to write Plaintiff up for minor infractions. Upon information and belief, other employees were not written up for the same minor infractions.

30. For another example, Jovel repeatedly made last-minute changes to Plaintiff's schedule, forgoing the requisite 24-hour notice for which Defendant's policies provided. This made it difficult for Plaintiff to arrive to work on time.

31. Upon information and belief, Jovel has a history of exhibiting discriminatory behavior toward employees with a disability. Defendant was aware of Jovel's harassing behavior and took no actions in rectifying Jovel's discriminatory conduct.

32. Plaintiff verbally complained several times to management and HR about Jovel's discrimination and retaliation.

33. Upon information and belief, Defendant took no meaningful action to investigate or correct the discrimination and retaliation. When Plaintiff would make a complaint, Jovel's harassment would cease temporarily then resume after a short period of time.

34. On or about April 18, 2017, Plaintiff had to undergo knee surgery (the "Surgery") stemming from her December 2015 Injury.

35. Following her surgery, Plaintiff was on a leave of absence from April 2017 to October 2017.

36. Upon Plaintiff's return to work, Plaintiff provided a doctor's note to state Plaintiff was being placed on light duty. Plaintiff's medical restrictions called for frequent position changes, no standing for more than 45 minutes to an hour, no stooping or crouching, and no repetitive lifting, and no lifting more than 15 to 20 pounds.

37. Plaintiff sought and was approved for intermittent FMLA leave in October 2017.

38. In addition, as a reasonable accommodation for her condition, Plaintiff requested to be transferred to the Member Service department where her job duties and responsibilities would be less strenuous and would fit within her medical restrictions. Defendant declined to provide this accommodation. Instead, Defendant assigned Plaintiff to be a front entrance worker while maintaining the job title of Cashier.

39. Plaintiff requested a chair to sit on after standing for 45 minutes to an hour per her medical restrictions. Jovel offered Plaintiff a stool that was too high with no back support or leg support, knowing Plaintiff just had knee surgery and was aware of Plaintiff's medical restrictions. In addition, Plaintiff would use a shopping cart at times to elevate her leg to relieve pain and pressure on her leg. However, refusing to allow Plaintiff this accommodation, Jovel took away the shopping cart and told Plaintiff she was not allowed to use it under any circumstances.

40. Moreover, Defendant failed to abide by Plaintiff's medical restrictions, requiring her to stand for more than 45 minutes at a time. Plaintiff's knee injury was exasperated as a result.

41. During portions of 2018, Plaintiff was on intermittent FMLA leave. When using FMLA time, she provided medical notes to substantiate the need for her absence from work.

42. In January 15, 2019, Plaintiff attended a mandatory meeting via telephone conference with Jacqueline Pirillo ("Pirillo"), the new General Manager at the Riverhead warehouse, and Jennifer Stoner ("Stoner"), Human Resources representative.

43. At the end of the meeting, Stoner told Plaintiff that she was being placed on unpaid leave effective immediately. Stoner told Plaintiff that another employee was returning, and Plaintiff had to leave the department despite Plaintiff having more seniority. Pirillo informed Plaintiff that her last day at work would be January 15, 2019.

44. Moreover, Stoner told Plaintiff that she could return to work when she was "100% better" and able to perform duties as a Cashier.

45. Defendant's reason for forcing Plaintiff out on involuntarily leave -- i.e. that Plaintiff could not perform her duties as a Cashier – was not based in fact. Defendant kept Plaintiff's title as a Cashier even though Plaintiff was performing the duties and responsibilities of a front entrance worker on and off in 2016 and then permanently from 2017 until 2019 with no issues.

46. Defendant could have easily allowed Plaintiff to continue serving as a front entrance worker but chose not to accommodate Plaintiff, instead forcing Plaintiff out on involuntarily leave.

47. Upon information and belief, Plaintiff was placed on a leave of absence in retaliation for her use of intermittent FMLA leave, discrimination based on her disability, and in retaliation for her complaints of discrimination and retaliation.

48. Plaintiff was shocked and upset by these events. Plaintiff suffered loss of sleep and depression. Plaintiff's emotional state became so fragile that she spontaneously shaved her head.

49. As a result of the discrimination Plaintiff endured from Defendant, she was diagnosed with major depression and anxiety and was prescribed medication for insomnia. Plaintiff has been in treatment with a therapist since in or around December 2019. Plaintiff also began to overeat which led to a diagnosis of type-two diabetes. Plaintiff's relationship with her family members was also negatively affected by the discrimination and retaliation she suffered from Defendant.

50. Plaintiff filed a charge of discrimination with EEOC on July 16, 2019. The EEOC referred Plaintiff's charge to their investigation division on August 2019. Thereafter, after the EEOC investigated, a determination of reasonable cause was issued in favor of Plaintiff on March 24, 2020.

51. On October 2, 2020, Plaintiff received a letter dated September 30, 2020 from Defendant terminating her employment.

52. Upon information and belief, Plaintiff's termination was in retaliation for filing her claims of discrimination and retaliation with the EEOC.

53. The news of her termination threw Plaintiff into deeper depression.

54. Contrary to the law, Defendant failed to provide any reasonable accommodation or engage in the interactive process to determine whether a reasonable accommodation could be made for Plaintiff's disability.

55. Defendant's actions are particularly egregious because Plaintiff sustained the injury that rendered her disabled while working for Defendant.

56. Defendant has no justifiable or reasonable excuse for refusing Plaintiff an accommodation and for terminating her employment.

57. Defendant had no good faith business justification for terminating Plaintiff's employment,

refusing her requests for reasonable accommodation(s), and failing/refusing to engage in the interactive process.

58. Plaintiff had, and/or Defendant perceived that she had, a physical impairment that substantially limits one or more of her major life activities.

59. But for Plaintiff's disability, and/or need for a reasonable accommodation, Defendant would not have terminated her employment.

60. Upon information and belief, Plaintiff was a hard-working employee, who made every attempt to communicate with Defendant regarding the discriminatory and retaliatory work environment to which she was subjected.

61. But for Jovel's managerial position with Defendant, Jovel would not have been able to subject Plaintiff to a discriminatory and hostile work environment at Defendant.

62. Upon information and belief, Defendant is aware of its obligations under the FMLA, ADA, the NYSHRL, and the SCHRL.

63. A Defendant is aware of its legal duty and obligation to engage in an interactive process and to assess an employee's need for accommodations when the employee places Defendant on notice of a medical need and/or disability, which prevents the employee from continuing to work.

64. As a result of Defendant's action, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

65. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of income, the loss of a salary, bonus, and benefits, and other damages. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of

enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

66. Plaintiff was, and remains, a qualified individual who can perform the essential functions of her employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

67. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law, and/or violation thereof.

68. As such, Plaintiff demands punitive damages against Defendant.

## AS A FIRST CAUSE OF ACTION FOR RETALIATION AND INTERFERENCE UNDER THE FAMILY AND MEDICAL LEAVE ACT

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

70. Section 2612(a)(1) of the Family Medical Leave Act states in pertinent part: an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:… (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

71. Section 2615 of the Family Medical Leave Act, states in pertinent part:

> (a) Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.
>
> (b) Interference with proceedings or inquiries. It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual— (2) has given, or

10

    is about to give, any information in connection with any inquiry or proceeding relating to any right provided.

72. Defendant interfered with Plaintiff's FMLA rights by discriminating against Plaintiff for exercising her rights under the FMLA.

73. Defendant also retaliated against Plaintiff for her use of and request to use FMLA leave.

74. Defendant had no good faith business justification for any of the actions taken against Plaintiff as alleged herein.

75. As such, Plaintiff has been damaged as set forth herein.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE ADA

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

77. Plaintiff claims Defendant violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

78. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

79. Defendant violated this section as set forth herein.

## AS A THIRD CAUSE OF ACTION
## FOR RETALIATION UNDER THE ADA

80. Plaintiff repeats, reiterates, and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

81. The ADA prohibits retaliation, interference, coercion, or intimidation against an employee who engages in protected activity.

82. 42 U.S.C. § 12203 provides:

> Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

83. Defendant violated this section as set forth herein.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE NEW YORK STATE LAW

84. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

85. Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, **disability**, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

86. Defendant violated this section as set forth herein.

## AS A FIFTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK STATE LAW

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

89. Defendant violated this section as set forth herein.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE SUFFOLK COUNTY LAW

90. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

91. The Regulatory Local Laws of Suffolk County § 528-7 provides that

> (6) For any employer…to discharge, expel or otherwise discriminate against any individual because he or she has: (a) Opposed any practices forbidden under this article; or (b) Filed a complaint, testified, or assisted in any proceeding under this article; or (c) Commenced a civil action against such employer… or employee or agent thereof, which action alleges the commission of an unlawful discriminatory practice;
>
> (9) For an employer, employment agency or labor organization to refuse to provide reasonable accommodations to the known disabilities… of an employee … in connection with a job or occupation sought... Nothing contained in this Subsection **A(9)** shall be construed to require provision of accommodations which the employer, employment agency or labor organization can demonstrate will impose an undue hardship on the operation of an employer's...

92. The Suffolk County Regulatory Local Laws §528-6 defines group identity as "[t]he actual or perceived race, color, creed, age, national origin, alienage or citizenship status, gender,

sexual orientation, **disability**, marital status, or familial status of any individual, as well as the actual military status of any individual." (Emphasis added.)

93. As described above, Defendant violated this section as set forth herein.

### AS A SEVENTH CAUSE OF ACTION FOR RETALIATION UNDER THE SUFFOLK COUNTY LAW

94. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein.

95. The Suffolk County Regulatory Local Laws § 528-12(B) provides that it shall be an unlawful discriminatory practice for an employer "to retaliate or discriminate against any individual because he or she has opposed any practice forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under the article."

96. As described above, Defendant violated this section as set forth herein.

### JURY DEMAND

97. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by the FMLA, ADA, NYSHRL and the SCHRL in that Defendant denied Plaintiff's request for accommodation, discriminated against Plaintiff on the basis of her actual and/or perceived disability, and retaliated against Plaintiff, resulting in her employment termination;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury,

14

distress, pain and suffering and injury to her reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
November 20, 2020

                                          **PHILLIPS & ASSOCIATES,**
                                          **ATTORNEYS AT LAW, PLLC**

By:   /s/ Lisa Skruck
        Lisa Skruck, Esq.
        Irene Chan, Esq.
        *Attorneys for Plaintiff*
        585 Stewart Avenue, Suite 330
        Garden City, NY 11530
        (516) 365-3731
        lskruck@tpglaws.com
        ichan@tpglaws.com